OPINION OF THE COURT
Sgroi, J.
On this appeal we address the evolving issue of personal juris *36 diction in the “Internet age.” The plaintiff, who is a resident of the State of New York, traveled out of state to undergo surgical treatment at the Florida-based Laser Spine Institute (hereinafter LSI), after first learning about the facility through an advertisement on the home page of the Internet service provider America Online (hereinafter AOL). The primary issue raised on appeal is whether LSI and several physicians who treated the plaintiff at the LSI facility in Florida are subject to long-arm jurisdiction in the medical malpractice action commenced against them by the plaintiff in New York. For the reasons that follow, we conclude that the defendants are not subject to such jurisdiction and, thus, the Supreme Court properly dismissed the complaint pursuant to CPLR 3211 (a) (8).
As indicated, the plaintiff, Frank Paterno, is a resident of the State of New York. The plaintiff alleged that, in May 2008, while viewing the AOL home page, he noticed an advertisement posted by LSI. Clicking on this advertisement, the plaintiff viewed a five-minute video presentation in which a professional golfer, who was a former patient of LSI, touted the company’s medical and surgical services. The plaintiff, who suffered from back pain, thereafter contacted LSI “by telephone and internet,” and took the affirmative step of sending his MRI films to the LSI facility in Florida. The plaintiff communicated with LSI through Andrew Vaught, who identified himself as “a patient advocate at LSI.”
On May 30, 2008, the plaintiff received from Vaught private insurance forms and a letter setting forth, inter alia, surgical recommendations for his condition. On that same date, the plaintiff was contacted by Vaught, who advised that if he were willing to travel to Tampa, Florida, on short notice, LSI could perform the recommended surgery on June 9, 2008, “at a significant discount.” On June 2, 2008, the plaintiff completed the insurance forms which he had received from LSI, and he again contacted Vaught to discuss payment arrangements. On June 3, 2008, the plaintiff received an email message from LSI, which contained a lengthy registration form. On this same date, the plaintiff spoke by telephone to two LSI representatives, one of whom responded to certain questions which the plaintiff had raised, and the other of whom informed him that LSI “needed [the plaintiffs] ‘blood work’ sent [to it].” On June 4, 2008, the plaintiff allegedly was advised by his New York physician that a physician at LSI had contacted the New York physician, and that the two physicians “briefly discussed [the] upcoming surgery [to be performed at LSI].” At the same time, the *37 plaintiff had blood work completed at his family physician’s office in White Plains, New York, and these results were thereafter forwarded to LSI. On June 9, 2008, and June 11, 2008, the plaintiff underwent surgical procedures at the LSI facility in Tampa, Florida. The plaintiff returned home to New York on June 12, 2008. He subsequently contacted LSI, advising its physicians that he was suffering “constant pain” and seeking medication to alleviate this condition. In response, the LSI physicians provided prescriptions, which the plaintiff filled at local pharmacies in New York.
The plaintiff further alleged that, on July 14, 2008, at his request, a telephone conversation was held between a representative of LSI and a New York physician whom the plaintiff had consulted; that “following [this call] LSI agreed to fly me back to Tampa, free of charge, for revision surgery”; and that, “in the period from July 2008 through August 3, 2008, I had numerous telephone calls and email exchanges with [the head] of Patient Advocacy/Relations at LSI.” Notably, although the plaintiff submitted copies of various email messages transmitted between him and LSI, the record herein does not contain transcriptions of any email messages from the period between July 2008 and August 3, 2008. The plaintiff underwent his third surgical procedure at the LSI facility in Florida on August 6, 2008. He returned to New York on August 9, 2008.
The plaintiff claimed that he was still in pain after the third surgery, and that, from “August 9, 2008 to October 31, 2008, [he] communicated almost daily with [the head of Patient Advocacy/Relations at LSI] via text messages, phone calls and emails.” The record contains copies of numerous email messages transmitted between the parties during this period; most of these were initiated by the plaintiff. On August 26, 2008, in response to the plaintiffs telephone call to him, the defendant Craig Wolff “ordered an MRI to be performed at [a facility] in Tarrytown, New York.” According to the plaintiff, this MRI scan showed a collection of fluid surrounding the surgical area. The plaintiff then consulted with New York physicians and, after a telephone call between Wolff and one of the New York physicians, LSI offered “to fly [the plaintiff] to Tampa, at LSI’s expense, to address the problem.”
The plaintiff did not return to the LSI facility, but did contact LSI’s president on September 7, 2008, to “explain his predicament.” Between September 11, 2008, and December 2008, the plaintiff contacted LSI numerous times to discuss his case, to *38 “get further information,” and to obtain his medical records, reports, and MRI films from LSI. Ultimately, on April 3, 2009, after further consultations with New York physicians, the plaintiff underwent additional surgery in New York by physicians, who were not affiliated with LSI, “to correct [his] condition.”
In September 2010, the plaintiff commenced this action against LSI and various doctors who were involved in the plaintiff’s treatment at LSI, to recover damages for medical malpractice, negligent hiring and supervision, and lack of informed consent. In October 2010, the defendants moved to dismiss the complaint pursuant to CPLR 3211 (a) (8) on the ground of lack of personal jurisdiction. The defendants argued, inter alia, that they were not subject to personal jurisdiction in New York under any subsection of CPLR 302 (a), New York’s long-arm jurisdiction statute, since they neither transacted business in this state (see CPLR 302 [a] [1]), nor “committed] a tortious act without the state causing injury to person [s] . . . within the state” (CPLR 302 [a] [3]). In particular, the defendants noted that LSI was a Florida corporation; that the defendant physicians were all domiciliaries of Florida; that LSI was not licensed to do business in New York; and that none of the defendants maintained offices in New York, or had a telephone line or other point of contact in New York. Thus, the defendants argued that they neither maintained the requisite minimum contacts with New York, nor purposefully availed themselves of the benefits of conducting business in New York. Accordingly, the defendants contended that, under the totality of the circumstances, they were not subject to personal jurisdiction in New York.
In opposition, the plaintiff argued that the defendants had engaged in a course of activity sufficient to satisfy the jurisdictional requirements of CPLR 302 (a) (1). More specifically, the plaintiff contended that the defendants’ transaction of business in New York was evidenced by LSI’s solicitation of his business through its advertisement on AOL; the “communication stream” between him and the defendants both before and after the surgical procedures; the defendants’ consultation with the plaintiffs New York-based physicians; the defendants’ direction that the plaintiff have blood work performed in New York; and the filling of the defendants’ prescriptions for the plaintiff at New York pharmacies. The plaintiff asserted that the totality of the circumstances satisfied the “substantial relationship” test *39 between the defendants’ acts in New York and the transaction upon which his claim of injury was based. In addition, the plaintiff argued that the defendants were subject to personal jurisdiction pursuant to CPLR 302 (a) (3) because they had committed tortious acts outside of New York State that caused injury to him within New York.
The Supreme Court granted the defendants’ motion, concluding that they did not transact business in New York State (see CPLR 302 [a] [1]), and that “CPLR 302 (a) (3) is inapplicable as well as the alleged tortious activity did not cause injury to plaintiff within the state within the meaning of the statute” (2011 WL 11003906, *1 [Sup Ct, Westchester County 2011]).
We begin with the principle that, where a motion is made to dismiss a complaint for lack of personal jurisdiction, it is the plaintiff who bears the “ ‘ultimate burden of proof’ ” to prove a basis for such jurisdiction (Daniel B. Katz & Assoc. Corp. v Midland Rushmore, LLC, 90 AD3d 977, 978 [2011], quoting Comely v Dynamic HVAC Supply, LLC, 44 AD3d 986, 986 [2007]; see Fischbarg v Doucet, 9 NY3d 375 [2007]). Although, as noted by the dissent, such a motion can be successfully opposed by a “prima facie showing that the defendants] w[ere] subject to the personal jurisdiction of the [court]” (Daniel B. Katz & Assoc. Corp. v Midland Rushmore, LLC, 90 AD3d at 978 [internal quotation marks omitted]), we disagree with the conclusion that the plaintiff has made such a showing.
CPLR 302 (a) (1) provides as follows:
“(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
“1. transacts any business within the state or contracts anywhere to supply goods or services in the state.”
In determining the meaning of the phrase “transacts any business,” the courts have stated that an entity transacts business when it “purposefully” avails itself of the benefits and privileges of conducting business in New York. It is not necessary that the entity be physically present in the state to conclude that it has “purposefully availed” itself, and a single transaction can satisfy the statute where that transaction is “ ‘purpose *40 ful and there is a substantial relationship between the transaction and the claim asserted’ ” (Kimco Exch. Place Corp. v Thomas Benz, Inc., 34 AD3d 433, 434 [2006], quoting Deutsche Bank Sec., Inc. v Montana Bd. of Invs., 7 NY3d 65, 71 [2006], cert denied 549 US 1095 [2006]; see Kreutter v McFadden Oil Corp., 71 NY2d 460, 467 [1988]; Daniel B. Katz & Assoc. Corp. v Midland Rushmore, LLC, 90 AD3d at 979; Grimaldi v Guinn, 72 AD3d 37, 44 [2010]).
However, it is not the number of contacts which is determinative of whether a defendant purposely availed itself of the benefits and privileges of conducting business in New York. Each jurisdictional inquiry pursuant to CPLR 302 (a) (1) will turn upon the examination of the particular facts of the case, “[a]nd although determining what facts constitute ‘purposeful availment’ is an objective inquiry, it always requires a court to closely examine the defendant’s contacts for their quality ” (Licci v Lebanese Can. Bank, SAL, 20 NY3d 327, 338 [2012] [emphasis added]; see Fischbarg v Doucet, 9 NY3d at 380). “Purposeful activities are those with which a defendant, through volitional acts, avails itself of the privilege of conducting activities with the forum State, thus invoking the benefits and protections of its laws” (Daniel B. Katz & Assoc. Corp. v Midland Rushmore, LLC, 90 AD3d at 979 [internal quotation marks omitted]; see Fischbarg v Doucet, 9 NY3d at 380; McKee Elec. Co. v RaulandBorg Corp., 20 NY2d 377, 382 [1967]). “Whether anon-domiciliary has engaged in sufficient purposeful activity to confer jurisdiction in New York requires an examination of the totality of the circumstances” (Farkas v Farkas, 36 AD3d 852, 853 [2007]).
In the case at bar, the “totality of circumstances” does not provide the plaintiff with a basis for imposing long-arm jurisdiction over the defendants. Initially, we note that personal jurisdiction cannot be based upon LSI’s website, since, as far as the record reveals, this website was informational only and, thus, “passive” in nature. There is no indication that the website permitted a user thereof to purchase any goods or services from LSI, that it contained any online form application process, or that it allowed any interaction through the site (see Zippo Mfg. Co. v Zippo Dot Com, Inc., 952 F Supp 1119 [WD Pa 1997]). “When a website is passive . . . plaintiffs may have to prove ‘something more’ to justify the exercise of personal jurisdiction — that is, plaintiffs must show that the defendant ‘purposefully (albeit electronically) directed his activity in a substantial *41 way to the forum state’ ” (Morilla v Laser Spine Inst., LLC, 2010 WL 3258312, *4, 2010 US Dist LEXIS 83608, *11 [D NJ, Aug. 16, 2010, Civ. No. 2:10-cv-01882 (WHW)], quoting S. Morantz, Inc. v Hang & Shine Ultrasonics, Inc., 79 F Supp 2d 537, 540 [ED Pa 1999]).
This Court has also recently held that such a passive website, without more, cannot be used as the basis for the assertion of long-arm personal jurisdiction. In Grimaldi v Guinn, this Court stated:
“If the foreign company maintains an informational Web site accessible to the general public but which cannot be used for purchasing services or goods, then most courts would find it unreasonable to assert personal jurisdiction over that company (see generally American Homecare Fedn., Inc. v Paragon Scientific Corp., 27 F Supp 2d 109 [1998])” (Grimaldi v Guinn, 72 AD3d 37, 48 [2010]).
While the Grimaldi decision also concluded that “passive Web sites, when combined with other business activity, may provide a reasonable basis for the assertion of personal jurisdiction” (id. at 49 [citation omitted]), the “other business activity” must be more substantial and more connected to the claim asserted than what has been preferred herein by the plaintiff.
Contrary to our dissenting colleagues’ conclusion, LSI’s email messages to the plaintiff in New York and telephone conversations with the plaintiff while he was in New York do not constitute “business” activity and are not sufficiently “purposeful” for jurisdictional purposes (Kimco Exch. Place Corp. v Thomas Benz, Inc., 34 AD3d at 434).
Although the case at bar involves a number of telephone calls and email messages, nevertheless, it cannot be concluded that LSI “ ‘projected [itself] into New York in such a manner [as to] purposefully avail [itself] ... of the benefits and protections of [New York] law[ ]’ ” (Milliken v Holst, 205 AD2d 508, 509 [1994], quoting United States Theatre Corp. v Gunwyn/ Lansburgh Ltd. Partnership, 825 F Supp 594, 595 [SD NY 1993] [some internal quotation marks omitted] [there was no jurisdiction pursuant to CPLR 302 (a) (1) because the parties’ many communications were not intended to do business in New York; rather, the communications focused on doing business outside of New York]; see Skrodzki v Marcello, 810 F Supp 2d 501 [ED NY 2011] [in a case involving a dispute over a contract which had been initiated over the Internet, the New York long-arm ju *42 risdiction statute did not support the exercise of personal jurisdiction over the foreign defendant even though the parties had regular contact during the subject transaction]).
Additionally, the “many communications” between the parties, which mostly emanated from the plaintiff, were all related to the surgeries which occurred in Florida (see e.g. Liberatore v Calvino, 293 AD2d 217, 220 [2002] [noting that telephone calls and “written communications . . . generally are held not to provide a sufficient basis for personal jurisdiction under the long-arm statute” unless they are “shown to have been used by the defendant to actively participate in business transactions in New York” (internal quotation marks omitted)]; see also Milliken v Holst, 205 AD2d at 509-510; J. E. T. Adv. Assoc. v Lawn King, 84 AD2d 744, 745 [1981]).
A contrary conclusion is not warranted simply because the plaintiff completed, in New York, the paperwork which the defendants had sent to him prior to his initial trip to Florida. In fact, such a basis for imposing long-arm jurisdiction was specifically rejected by this Court in Kimco Exch. Place Corp. v Thomas Benz, Inc. (34 AD3d 433 [2006]). In Kimco, the parties exchanged two executed exclusive marketing agreements by facsimile transmission, pursuant to which the plaintiff was to market nationally several of the defendants’ properties that were not situated in New York. While the plaintiff was conducting its marketing campaign, the defendants made follow-up telephone calls. This Court concluded that the “defendants’ acts of faxing the executed contracts to New York and of making a few telephone calls do not qualify as purposeful acts constituting the transacting of business . . . but rather were merely attempts to contact the plaintiff” (id. at 434 [citations omitted]).
Furthermore, neither the fact that the plaintiff underwent certain testing in New York (i.e., Mood work and MRIs) in connection with his Florida treatment, nor the fact that the individual defendants telephoned prescriptions to the plaintiff’s New York pharmacy, nor even that the defendants had conversations with the plaintiffs local physician, requires the conclusion that the defendants transacted business in this state. In O’Brien v Hackensack Univ. Med. Ctr. (305 AD2d 199 [2003]), the Appellate Division, First Department, determined that a New Jersey hospital was not subject to long-arm jurisdiction in New York in a malpractice action even though the hospital solicited New York patients and the plaintiff’s decedent in that action underwent some treatment in New York. In part, the Court stated:
*43 “This is a medical malpractice action in which the parties dispute whether New York’s long-arm statute (CPLR 302) confers jurisdiction over . . . a New Jersey medical center [where plaintiff’s decedent was treated] . . . Defendant’s principal place of business is in New Jersey, and it is not licensed to do business in New York, maintains no office or other place of business in New York, [and no New York phone number or bank accounts or real estate]. The purported New York contacts are that defendant solicits patients that reside in New York [including the decedent and] has an affiliation with New York’s Einstein Hospital in which regard referrals are made to New York doctors for laboratory work and examinations . . . [The plaintiff also] contends that decedent was prescribed chemotherapy by one of defendant’s physicians, which was administered at Einstein in New York, and that treatment continued by telephone calls, mail and fax between [decedent’s New York and New Jersey] physicians . . .
“[M]ere solicitation of business within the state does not constitute the transaction of business within the state, unless the solicitation in New York is supplemented by business transactions occurring in the state, or the solicitation is accompanied by a fair measure of the defendant’s permanence and continuity in New York which establishes a New York presence . . . The purported solicitation in the present case, even accompanied by what really amounts to treatment of New York residents in New Jersey, does not provide a stronger case for finding that defendant transacted business in New York.” (O’Brien v Hackensack Univ. Med. Ctr., 305 AD2d at 199-200, 201 [citations omitted; emphasis added].)
Similar conclusions have been reached in other medical malpractice cases (see Etra v Matta, 61 NY2d 455, 456 [1984] [New York resident was first treated by Massachusetts doctor and thereafter by a New York doctor; however, the Massachusetts physician continued to act as a consultant and communicated by phone and letter. The Court held that such circumstances were “too insubstantial” to confer New York jurisdiction over the nondomiciliary doctor]; Hermann v Sharon Hosp., 135 AD2d 682, 683 [1987] [no basis for long-arm jurisdiction over Connecticut hospital which maintained no office in New York, even *44 though a “sizeable portion of its patients reside in New York”]). The fact that the decisions in Etra and Hermann predate the advent of the Internet does not alter the still-valid premise that the mere solicitation of business in this state does not amount to the transaction of business herein.
As indicated, the other category of CPLR 302 which is relied upon by the plaintiff to confer personal jurisdiction over the defendants is CPLR 302 (a) (3), which applies where a nondomiciliary, inter alia, “commits a tortious act without the state causing injury to person or property within the state.” However, the “ ‘situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are subsequently felt by the plaintiff (see, McGowan v Smith, 52 NY2d 268, 273-274)’ ” (Vaichunas v Tonyes, 61 AD3d 850, 851 [2009], quoting Hermann v Sharon Hosp., 135 AD2d at 683 [emphasis added]; see Lang v Wycoff Hgts. Med. Ctr., 55 AD3d 793 [2008]; see also Carte v Parkoff, 152 AD2d 615, 616 [1989]; Uzan v Telsim Mobil Telekomunikasyon Hizmetleri A.S., 51 AD3d 476, 478 [2008]; Marie v Altshuler, 30 AD3d 271, 272-273 [2006]; Polansky v Gelrod, 20 AD3d 663, 665 [2005]; Siegel, NY Prac § 88 at 164 [4th ed 2005] [“With respect to both subparagraphs (i) and (ii), it has been held that the original injury must occur in New York. If the injury occurs outside New York and just becomes manifest in New York, or has its greatest consequences in New York . . . the statute is not satisfied”]).
Accordingly, since the situs of the initial alleged injury in this case is Florida, where the surgical procedures took place, New York cannot exercise personal jurisdiction over the defendants pursuant to CPLR 302 (a) (3), regardless of the fact that the plaintiff suffered pain after his return to New York.
Furthermore, since the injury did not occur in New York, it is not necessary to consider the additional criteria of CPLR 302 (a) (3) (i) and (ii), i.e., whether the defendants regularly do or solicit business, or engage in any other persistent course of conduct, or derive substantial revenue from goods used or consumed or services rendered, in the state, or expect or should reasonably expect the act to have consequences in the state and derive substantial revenue from interstate or international commerce. In any event, the plaintiff failed to make a prima facie showing that the defendants met the other criteria of CPLR 302 (a) (3). Specifically, the record does not show that the defendants regularly do or solicit business in New York, and it is devoid of any other evidence demonstrating either a “ ‘persistent *45 course of conduct, or [that the defendants] derive[d] substantial revenue from goods used or consumed or services rendered, in the state’ ” (Ingraham v Carroll, 90 NY2d 592, 596 [1997], quoting CPLR 302 [a] [3] [i] [additional emphasis added]; see also LaMarca v Pak-Mor Mfg. Co., 95 NY2d 210 [2000]).
We also disagree with our dissenting colleagues’ conclusion that recent actions commenced in federal courts, involving the same corporate defendant, compel the conclusion that New York can properly exercise personal jurisdiction in the case at bar. The dissent cites Henderson v Laser Spine Inst. (815 F Supp 2d 353 [D Me 2011]), wherein the United States District Court for the District of Maine held that, under Maine law, the State of Maine could properly exercise personal jurisdiction based upon a totality of circumstances, which included “(1) the traditional contacts of phone, email, and faxed solicitations to [the plaintiff]; (2) the nationwide advertising placed in traditional magazines and far flung in-flight catalogues; and (3) the semi-interactive website claiming to have helped ‘tens of thousands of people — from all SOstates’ ” (id. at 377). However, the record in the case at bar does not contain any evidence that LSI “solicited” the plaintiffs business, other than the Internet advertisement by which the plaintiff became aware of its services. Moreover, the plaintiff does not even allege that LSI had a presence in this state through any of the “traditional contacts” which were referenced in the Henderson case.
The dissent also cites Bond v Laser Spine Inst., LLC (2010 WL 3212480, 2010 US Dist LEXIS 82736 [ED Pa, Aug. 11, 2010, No. 10 1086]), wherein the court concluded that, under Pennsylvania law, the defendant was subject to personal jurisdiction in Pennsylvania. However, the contacts between the plaintiff there and LSI were more extensive than those in the instant action. In particular, in the Bond case, LSI took an active role in the plaintiff’s postsurgical treatment while he remained in Pennsylvania, including advising an emergency room technician at the Bryn Mawr Hospital in Pennsylvania, where the plaintiff sought treatment, regarding what medication to prescribe. Additionally, as noted in the Bond decision, “the LSI doctor who advised the Bryn Mawr Hospital emergency room technician, Dr. Vernon Morris, is advertised on the LSI website as ‘a senior member of the LSI surgical team’ and ‘lead[er of] the Pennsylvania LSI surgical team’ ” (2010 WL 3212480, *9, 2010 US Dist LEXIS 82736, *27). There is no such connection between LSI and New York alleged in this case.
*46 It is also significant that the Henderson and Bond cases were decided in the context of long-arm jurisdiction statutes which permit personal jurisdiction to extend to the full extent allowed by the Federal Constitution. In a case arising under diversity jurisdiction, the federal court’s jurisdiction “is the functional equivalent of a state court sitting in the forum state” (Northern Laminate Sales, Inc. v Davis, 403 F3d 14, 24 [1st Cir 2005] [internal quotation marks omitted]). Both Maine and Pennsylvania have jurisdictional statutes which are coextensive with the limits of the Due Process Clause of the Fourteenth Amendment of the United States Constitution (see Henderson v Laser Spine Inst., 815 F Supp 2d at 367 [“ ‘(T)o insure maximum protection to citizens of this State,’ Maine's long-arm statute, extends ‘to the fullest extent permitted by the due process clause of the United States Constitution.’ 14 1VLR.S. § 7040A (1)”]; Bond v Laser Spine Inst., LLC, 2010 WL 3212480, *5, 2010 US Dist LEXIS 82736, *13 [“under Pennsylvania law, a court may base jurisdiction on the most minimum contact with Pennsylvania allowed under the Fourteenth Amendment’s Due Process Clause. 42 Pa. Cons. Stat. Ann. § 5322 (b)” (emphasis added)]). In contrast, New York does not confer jurisdiction over every case in which it would be allowed to exercise jurisdiction pursuant to the Due Process Clause of the United States Constitution. As stated by the Court of Appeals in the case of Ehrenfeld v Bin Mahfouz (9 NY3d 501, 512 [2007]):
“[W]e have repeatedly recognized that New York’s long-arm statute ‘does not confer jurisdiction in every case where it is constitutionally permissible’ (Kreutter [v McFadden Oil Corp.], 71 NY2d at 471; accord Talbot v Johnson Newspaper Corp., 71 NY2d 827, 828 [1988]). ‘Thus, a situation can occur in which the necessary contacts to satisfy due process are present, but in personam jurisdiction will not be obtained in this State because the statute does not authorize it’ (Banco Ambrosiano v Artoc Bank & Trust, 62 NY2d 65, 71 [1984]).”
Had the above cases been analyzed under this state’s more restrictive methodology for determining the exercise of personal jurisdiction, the results may have been different.
The case at bar is more analogous to another federal case, Morilla v Laser Spine Inst., LLC (2010 WL 3258312, 2010 US Dist LEXIS 83608 [D NJ, Aug. 16, 2010, Civ. No. 2:10-cv-01882 (WHW)]), a diversity jurisdiction lawsuit commenced by *47 residents of New Jersey. Even though the District Court in the Morilla case acknowledged that New Jersey courts consider federal constitutional law in determining the limits of personal jurisdiction, it nevertheless concluded that personal jurisdiction could not be exercised over the defendants. In both the Morilla case and the one at bar, all of the pertinent events took place in Florida, and the website was shown to be only passive in nature. In addition, unlike the allegations made in the Henderson case, the Morilla court noted that “[although] plaintiffs claim generally that defendants adverti[s]ed their services through ‘media and the internet . . .’ (Compl.8.)[,] [p]laintiffs do not elaborate, such as by asserting that defendants placed an advertisement in plaintiffs’ local New Jersey newspaper” (Morilla v Laser Spine Inst., LLC, 2010 WL 3258312, *5, 2010 US Dist LEXIS 83608, *13-14). As noted above, the plaintiff in the case at bar does not allege traditional media solicitation by LSI in this state.
For the foregoing reasons, there is no basis for the imposition of New York long-arm jurisdiction over the defendants and, thus, the Supreme Court properly granted that branch of the defendants’ motion which was to dismiss the complaint for lack of personal jurisdiction (see CPLR 3211 [a] [8]) based on CPLR 302. Thus, the order is affirmed insofar asappealed from.
Dickerson, J.